IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 15-CR-95-CVE |
| | ) |
| DERICK DEAN BROWN, | ) |
| | ) |
| Defendant. | ) |

## RESPONSE TO DEFENDANT'S MOTION FOR DOWNWARD VARIANCE

COMES NOW the United States of America by and through Danny C. Williams, Sr., United States Attorney for the Northern District of Oklahoma, and Jeffrey A. Gallant, Assistant United States Attorney, and submits its response to Defendant's Motion for Downward Variance (Dkt. 37, "Defendant's Motion"). In support of its response, the Government states the following:

### Factual Background

Defendant's Motion, along with the Presentence Report ("PSR"), provides a concise overview of the facts of this case. It serves no purpose to unduly highlight the specifics of Defendant's egregious crimes that involved "numerous, manipulative, and graphic" messages sent by Defendant to his victims. Dkt. 37 at 2. Two points that may not be clear should be emphasized, however.

First, Defendant's exploitation of the two victims occurred virtually simultaneously. His exploitation of the Montana Victim, LG, began first but continued after Defendant began communicating with the Oklahoma Victim, JR. Defendant repeatedly told LG that he loved her and that they would get married and have children together. *See e.g.* 21 of 225, lines 371-86; 154 of 225, lines 2736-51; 177 of 225, lines 3157-67.[1] Defendant even referred to himself as LG's

---

[1] Because these materials are available to the parties and the court, the government is not including them as exhibits in this publicly filed document. The citations used here refer to the consecutively

"fiancé" and indicated that they were already engaged. 81 of 225, line 1463. He was communicating with LG while he was also pursuing and sexually abusing JR. In fact, about two days before Defendant sexually abused JR, he told LG, in part, "Dont change. I fell in love with you as you are now. You know I forgive you. I'd never leave you. You're my angel." 181 of 225, line 3224. LG indicated that "I meant it when I said I want to spend forever with you." 181 of 225, line 3229. Defendant replied, "I know babe. I mean it as well." 181 of 225, line 3230.

The second point that should be emphasized is that Defendant did not appear to be random in his selection of victims. Instead, he targeted particularly emotionally vulnerable teenage girls. Defendant admitted that he was "attracted to qualities that younger girls possess." TPD Detective Supplemental Report, dated 4/6/15, at 6 ("TPD Report"). This suggests that Defendant targeted the naïve and vulnerable knowing that such children could be easily deceived, manipulated, and exploited.

With respect to JR, the text communications between JR and Defendant establish that Defendant knew JR was involved in "cutting." Cutting is a form of self-harm, often resulting from emotional problems. Defendant also admitted that JR had told him "something about being suicidal" and that she had started cutting. TPD Report at 2. JR did in fact have emotional problems. Defendant's claims of wanting to help her established a trust with JR that he later exploited in order to sexually abuse her.

With respect to LG, the exploitation was even more pervasive. LG repeatedly shared with Defendant her numerous emotional problems, including that she also was "cutting." *See e.g.* 137 of 225, Line 2485; 195 of 225, Line 3486; 142 of 225, Lines 2563-64; 184 of 225, Line 3286 and; 191 of 225, Lines 3414-35. Just as he did with JR, Defendant was able to exploit LG's

---

numbered 225 pages of text messages recovered and the specific lines, which are also numbered consecutively. Defendant is "Incoming," and LG is "Outgoing."

vulnerability. In fact, Defendant persuaded LG to send a sexually explicit video to him (Count One) after he sexually abused JR (Count Three).

On May 5, 2015, Defendant was charged in a five-count Indictment. On October 1, 2015, pursuant to a written plea agreement, Defendant pled guilty to Count One (related to LG) and Count Three (related to JR). The revised PSR calculated the Total Offense Level at 37, with Criminal History Category of I, resulting in an advisory sentencing range of 210 to 262 months of imprisonment. The Government has objected to the PSR and respectfully requests a two-level upward adjustment as warranted pursuant to USSG §3A1.1(b)(1). Accordingly, Defendant's Total Offense Level should be 39, Criminal History Category I, for an advisory sentencing range of 262 to 327 months. A sentence within this advisory range is fair and reasonable under the facts and circumstances of this case.[2]

## Argument and Authorities

**1.    Introduction**

Defendant seeks a variance down to a sentence of fifteen years, the minimum term of imprisonment for Count One (related to LG). Dkt. 37 at 1, 4. Such a sentence essentially ignores the entirety of the crimes Defendant committed against JR. This result would be unjust. The facts and circumstances of this case, especially the seriousness of the offense and need for deterrence, require a sentence within the advisory sentencing guideline range.

The Court's sentence must be reasonable under the sentencing factors listed at 18 U.S.C. § 3553(a). *United States v. Smart*, 518 F.3d 800, 803 (10th Cir. 2008). "Section 3553(a) mandates consideration of its enumerated factors and implicitly forbids consideration of factors outside its scope." *Smart*, 518 F.3d at 803-04. Under the facts and circumstances of this case, any sentence

---

[2] A sentence of 262 months would be within both the advisory range, as calculated by the PSR, and the range sought by the Government.

less than one within the advisory guideline range would be unreasonable. Nothing in Defendant's Motion justifies any kind of a variance.

**2.      Seriousness of each offense warranting a significant period of incarceration**

Defendant's crimes involved the sexual exploitation of two susceptible, naïve children. While they were vulnerable and reaching out for acceptance, he ripped away their innocence. As Defendant admits in his Motion, no sentence can restore what he took from his victims. It is also noteworthy that Defendant's behavior only stopped when he was apprehended by law enforcement posing as JR. There can be little doubt that Defendant would otherwise have continued his exploitation and abused more victims.

A sentence can provide a sense of Justice and reinforce to the victims, the defendant, and the community that Defendant's crimes are serious and merit severe sanction. Defendant seeks a sentence that minimizes his crimes and the harm he inflicted upon JR. Varying down to the mandatory minimum for Count One (related to LG) is to pretend that Defendant never exploited or harmed JR. As it is, as few as 30 additional months is added under the advisory sentencing guidelines for Count Three (related to JR). At least that many additional months are warranted to emphasize the seriousness of the crimes committed against JR.

Defendant's basis for a reduction is essentially that 15 fifteen years in federal prison is a "significant punishment." Dkt. 37 at 5. This is true; however, it begs the question. Defendant seeks a sentence that would indicate his conduct was the least egregious conduct included as a violation of 18 U.S.S. § 2251. Based on the relevant conduct of this case, including the multiple vulnerable victims, Defendant deserves a sentence beyond the minimum.

**3.      History and Characteristics of Defendant**

Defendant's background and circumstances, like any defendant, contain some purportedly mitigating circumstances. He was gainfully employed, served in the military and had no prior

criminal convictions. Defendant promptly pled guilty to his crimes against LG and JR and accepted responsibility for them. Accordingly, Defendant has been given credit for a lack of prior criminal history and will be given a three level reduction for his acceptance of responsibility.

However, Defendant is in fact better positioned that many similarly situated defendants. He claims no history of abuse or neglect. He enjoys the support of an apparently stable family network. The sorts of troubles that Defendant faced (broken engagement and back injury) are not extraordinary or unusual. The PSR notes that Defendant "reportedly" previously suffered a herniated disc but was not receiving treatment for the condition. It also notes that Defendant had no history of mental illness. Courts sometime, usually over government's objection, grant leniency to sexual offenders who have suffered abuse. But here, Defendant is seeking leniency apparently because he did not suffer any abuse. Defendant's stable background and characteristics are far from mitigating. If anything, they emphasize the intentionally predatory nature of his crimes. In short, there is nothing in Defendant's background that justifies any variance from the advisory guidelines.

**4. Deterrence**

Both specific and general deterrence warrant a sentence at least within the advisory sentencing guideline range. Defendant will be incarcerated for a long time. No one knows exactly what the future will be like if and when Defendant is released from custody. But one thing is known. There will still be vulnerable children naïve enough to be exploited by Defendant. The only way to guarantee such children are safe from Defendant is for him to be incarcerated. Therefore, specific deterrence is important in this case.

A sentence including a significant period of incarceration is also critical to send a strong general deterrent message. The rise of the Internet and social media makes it increasingly easy for predators to find victims. Unfortunately, this technology has in some ways also made it more

difficult to protect the vulnerable and naïve from predators. The whole purpose of deterrent sentencing is to discourage *adults* from manipulating the vulnerable and to raise awareness of the threat to *children*.

Furthermore, a strong deterrent message must be sought because crimes like these are difficult to detect and investigate. For obvious reasons, parents and their children may not disclose that the children have been victims of such crimes. They may fear that they will get in trouble themselves or have to face public embarrassment and humiliation. When courageous families come forward, as happened here, it is important that a strong deterrent message be sent. As these families have witnessed exploitation and humiliation, let them now witness Justice and, hopefully, healing. A serious sentence, at least within the advisory guideline range, would act as a deterrent to this, and any other, adult that wished to exploit and manipulate our children.

## Conclusion

For the foregoing reasons, the United States urges the Court to sentence Defendant to a sentence within the advisory sentencing guideline range.

Respectfully submitted,

DANNY C. WILLIAMS, SR.
UNITED STATES ATTORNEY

*s/Jeffrey A. Gallant*
JEFFREY A. GALLANT, OBA No. 18509
Assistant United States Attorney
110 West 7th Street, Suite 300
Tulsa, Oklahoma 74119
(918) 382-2715
(918) 560-7938 [Facsimile]
E-mail: jeff.gallant@usdoj.gov

6

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 3rd day of February, 2016, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal to the following:

    Stephen J. Greubel
    stephen_greubel@fd.org

    -and-

    Lee Berlin
    berlinlawfirm@gmail.com
    *Counsel for Defendant*

                                    *s/Jeffrey A. Gallant*
                                    Assistant United States Attorney